No. 10,626.

SUCCESSION OF MRS. M. FOERSTER.

.   Promissory notes receipted by the owner as follows: "This note is paid in full' afterward found among valueless ones, extinguished, when it is conclusively proven that the intention was to discharge the maker.

2.   The extinguishment of these notes is an accomplished fact, and release from their payment has passed to the state of an absolute presumption of release, either because they were considered paid as written across them, or for other good reason their extinguishment was preferred.

3.   These notes, at the instance of a legatee, will not be given binding effect anew unless it be shown that the superscription was not the result of the deliberate exercise of the owner's will.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Buck, Dinkelspiel & Hart* for the Executor, Appellee:

1.   Promissory notes, in unconstitutional commercial form, found among worthless papers of the deceased, with the words "This note is paid in full" written across them, signed by the deceased and explained, and accompanied by proof that this was done with the intention of discharging the makers of the notes, will be held extinguished and remitted.

2.   The modes of extinguishing obligations provided in the Civil Code are not exclusive of others; the extinction of an obligation may be a question of fact

involving the destruction or surrender of a right, resulting from acts of the creditor, done with the intention to release the debtor. Cage vs. People's Bank, 40 An. 198.

3. The writing on the notes is a virtual destruction of the obligation, until alleged and shown to have been the result of error, fraud, violence or some other extrinsic cause which would negative the natural effect of the writing on the notes.

4. An executor of an estate, finding such notes among the papers of the deceased, can not be compelled by heirs or legatees to sue on them, unless there is evidence to show that he could truthfully, or at least with appearance of probability, make the allegations necessary to rebut the presumption of remission or release resulting from the form in which he finds the notes; *a fortiori*, he can not be compelled to do so when the evidence shows the express intention of the holder, decedent, to release her or his debtors.

5. Article 2279, Revised Civil Code, in regard to obligations " lost or destroyed," speaks of such as are lost or destroyed by " decedent or force," and by implication excludes obligations voluntarily destroyed. This is the jurisprudence of the Roman and French law.

6. The articles of the Code on " remission " are liberally construed and acceptance is always presumed. The weight of authority in the French law holds that "remission," technically as defined by the code, may take place by the mere will of the creditor without notice to the debtor. Where this will is expressed by an act destructive of the evidence of the indebtedness the discharge is complete; the act is not subject to any formality; it is not a donation; nothing passes by it from one to another; it is a destruction, surrender or cancellation of a right which accomplishes itself by the voluntary destruction of the evidence of it, coupled with the intention that the right shall perish with it.

---

*Wm. Armstrong* and *F. C. Zacharie* for Opponents and Appellants:

The transactions in question herein must be considered either as donations or remissions of debts.

The donations of incorporeal rights must be by act before a notary and two witnesses. Art. 1536, R. C. C.; 12 Rob. 77; 22 An. 97.

No valid or legal donation has occurred herein. The donation of corporeal rights must be accompanied by manual delivery or tradition. R. C. C. 1539; 19 An. 96; 11 An. 467; 26 An. 195.

To constitute the remission of debts herein involved five elements must concur. 1. The offer of remission by the creditor. 2. The notification of the offer by the creditor to the debtor. 3. The acceptance of the offer by the debtor. 4. A notification to the debtor by the creditor of his acceptance. 5. A manual delivery or tradition. R. C. C. 2201; Bouv. Inst., Vol. 2, Sec. 30°4, *et seq.;* Evans Pothier, Oblig., Vol. 1, p. 562 (606); 7 R. R. 387; 5 An. 560; Louque's Dig. Evidence, 111 (a).

---

The opinion of the court was delivered by

BREAUX, J.    The estate of Mrs. Foster was opened in 1888. The assets amounted to more than $40,000.

She left no forced heirs.

In her testament she donated her property to her nieces and grand nieces, and to a sister.

Some time prior to her death she was the owner of three promissory notes. Two of these notes are signed respectively by two of her nephews by marriage, and one by her niece.

About a month previous to her death another relative, who is named in her will as her testamentary executor, was sent to consult a well known notary who attended to her notarial business, to ascertain in what form she might remit the payment of these notes. It was thought preferable to cancel them entirely, but on the advice of the notary the words "This note is paid in full" was written on their face and signed by her.

She was an old lady, feeble, and evidently did not expect to live long. At her period of life, and in her frame of mind, it can not be presumed that she signed words of relinquishment of the obligation without seriously intending to release the parties.

They were relatives, named in her will.

It is stated in evidence that she desired to release the makers of these notes from their payment; for if she did not, they would receive but little under the terms of her will. She had a bank box in which she placed her valuable paper; another, a paper box, in which she put away papers that were valueless.

In the latter, loosely stored away, these notes were found with the worthless papers while the inventory of the succession property was being taken. The executor considered them of no value, and made no attempt to collect them.

He filed his final account. There are five legatees, each inheriting in the proportion of one-fifth.

One of these legatees filed an opposition to the homologation of the account, on the ground that the executor has failed to give account of these notes.

This opposition was dismissed, and the account was homologated.

On the trial it was proven that the maker of one of these notes knew of the release from the payment of his indebtedness before the death of his creditor.

His release from payment is not seriously questioned.

The makers of the other notes did not know of this superscription until after her death.

The question is exclusively one of remission of debt *vel non*, and is narrowed to a question of form and notice.

The opponent contends that to constitute a remission of the debt certain elements, wanting in this case, must concur, and confidently relies upon the absence of notice, of the release to the debtors and acceptance on their part.

It is also urged that the notice after the death of the creditor and the acceptance can not have any legal effect.

We have not found any absolutely analogous case reported in the decisions of this court.

In Peoples Bank vs. Cage et al., 40 An. 138, Marcadé's comments on the articles of the Code Napoleon, relating to the remission of debts, are quoted with approbation in so far as they applied, and in that case it was held that in addition to the general modes there is a. multitude of other causes of extinguishment peculiar to each kind of obligation. Marcadé declares that the remission of the debt is. not a novation. That it may be made expressly or tacitly, and the author affirms that it is a controverted question since many years,. that relating to the possibility or impossibility of extinguishing a. debt by the sole will of the creditor.

In support of the affirmative of the proposition it is said that the creditor is at liberty to relinquish his claim; that a debt can be remitted as well as that any other right can be abandoned; that no debt can exist without a corelative creditor, and that the abandonment which the creditor makes of his credit and by which it is extinguished carries with it *ipso facto* the extinguishment of the debt..

It was the doctrine of Barbeyrac, says Marcadé.

Duranton and Toullier argued in its support.

Pothier does not give it his undivided approbation. He opposes. the doctrine of Barbeyrac from a practical standpoint; at the same time he gives his assent to the extent of stating that a creditor can,. by his will alone and without special notice to his debtor, extinguish an indebtedness. Laurent, Vol. 18, p. 362.

There are French commentators opposed to the doctrine.

We accept the conclusions of those who argue in its support, being more in accordance with our Civil Code, in which the subject of remission is more liberally treated. See Article 2201 of the Civil Code,. not in the Code of Napoleon.

In the case of Booth vs. Succession of Smith, 3 Woods, p. 21, the.

13*

pleader alleged a voluntary destruction of the evidence of the debt, to recover which the suit was brought. The court held, in such case there can be no recovery based either on the instrument itself or on the debt, which was the consideration for which the instrument was given.

There follows a long list of decisions. The doctrine is not entirely without support in our jurisprudence. A gratuitous remission may be implied. Mouton vs. Noble, 1 An. 194.

The acceptance of a release from the payment of a debt was presumed, and it was held not revoked by the creditor. Lee vs. Ferguson, 5 An. 533; *vide* also Pike vs. Charotte, 39 An. 302.

By Article 2201, C. C., the "release or remission of a debt is presumed always to have been accepted by the debtor, and it can not be revoked by the creditor."

A few days after the death of the owner of these notes the two "makers" that had had no prior notice urgently claimed the release.

The benefit could not be revoked at the instance of the legatees.

Death will not give validity to canceled notes on the opposition of one of the legatees. Another article of our Code reads:

"When an instrument in writing containing obligations which the party wishes to enforce, has been lost or destroyed by accident or force, evidence may be given of its contents, provided the party shows the loss, either by direct testimony or by such circumstances, supported by the oath of the party, as render the loss probable; and in this case the jury may, if required, order reasonable security to be given to indemnify the party against the appearance of the instrument in case circumstances render it necessary." C. C. 2279.

No provision is made for acts of voluntary destruction establishing a discharge.

The opponent legatee can not reinstate their binding effect.

The debt was released.

The fact would not be more conclusively proven if the creditor had delivered the notes or had destroyed them after special notice to the debtor.

The cancellation is a *fait accompli*, and has passed to the state of an absolute presumption of release.

The opposition offers no ground to amend the judgment of homologation.

Judgment affirmed at appellant's costs.